IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CEDRICK NEAL, BOP # 04221-025,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) CIVIL NO. 11-1021-GPM |
| | ) |
| **JAMES N. CROSS, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Plaintiff Cedrick Neal, a prisoner in the custody of the Federal Bureau of Prisons who currently is incarcerated in the Federal Correctional Institution in Greenville, Illinois ("FCI Greenville"), brings this action pro se pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for alleged deprivations of his constitutional rights by persons acting under color of federal law. Neal's complaint is before the Court for screening pursuant to 28 U.S.C. § 1915A, which provides, in relevant part:

> (a) Screening. – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) Grounds for Dismissal. – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted[.]

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on

its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Though a court must accept a plaintiff's factual allegations as true, "some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim."  *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  Also, courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*.  The factual allegations of a pro se complaint must be liberally construed. *See Marshall v. Knight*, 445 F.3d 965, 969 (7th Cir. 2006) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

According to the allegations of Neal's pro se complaint, on or about February 7, 2011, a visit between Neal and his wife at FCI Greenville was cut short by the prison guard in charge of the visiting room at the time, ostensibly because Neal touched his wife's shoulder, in violation of a prison regulation that prohibits contact between prisoners and visitors except at the beginning and the end of a visit.  According to Neal, who is Muslim, shortly before Neal's visit with his wife was terminated, Defendant G. Jones, a guard at FCI Greenville, whispered to the officer in charge of the visiting rom that "Muslims think they own the world."  Doc. 1 at 3.  Named as Defendants in addition to Jones are James N. Cross, the warden of FCI Greenville, and G. Cooper, a guard at FCI Greenville.  Neal alleges a violation of his First Amendment right of free exercise of his religion, as well as violations of his due process right under the Fifth Amendment, his right to be free of cruel and unusual punishment under the Eighth Amendment, and his right of equal protection of the laws under the Fourteenth Amendment.

As an initial matter, the Court notes that Neal's complaint is devoid of allegations concerning Cross and Cooper. "*Bivens* actions are simply the federal counterpart to [42 U.S.C.] § 1983 claims brought against state officials[.]" *Snargrass v. United States Bureau of Prisons*, Civil No. 11-662-GPM, 2012 WL 187766, at *2 n.2 (S.D. Ill. Jan. 23, 2012) (quoting *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004)). It is well settled that Section 1983 "creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)). Accordingly, a Section 1983 plaintiff must make allegations that "associate specific defendants with specific claims . . . so [the] defendants are put on notice of the claims brought against them and so they can properly answer the complaint." *Willis v. Hulick*, Civil No. 09-cv-447-JPG, 2010 WL 358836, at *2 (S.D. Ill. Jan. 25, 2010) (citing *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003)). Said differently, a Section 1983 plaintiff "cannot state a claim against a defendant [merely] by including the defendant's name in the caption" of a complaint. *Allen v. Feinerman*, Civil No. 07-cv-805-MJR, 2009 WL 90118, at *2 (S.D. Ill. Jan. 14, 2009) (quoting *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998)). Neal has failed to state a claim against Cross and Cooper.[1]

---

1. To the extent that Neal's claim against Cross is based upon the latter's denial of Neal's grievances and administrative complaints, there is, of course, a constitutional right to address complaints to state officials. *See Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009). However, the right to petition for redress of grievances "does not require that a government official respond to the grievance." *Jones v. Brown*, 300 F. Supp. 2d 674, 679 (N.D. Ind. 2003). Also, "a citizen's right to petition the government does not guarantee . . . the right to compel government officials to . . . adopt a citizen's views." *Webb v. Randle*, Civil No. 10-470-GPM, 2011 WL 678815, at *4 (S.D. Ill. Feb. 16, 2011) (quoting *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999)) (brackets omitted). The United States Court of Appeals for the Seventh Circuit specifically has held

At most, the allegations of Neal's complaint show that Jones made a derogatory comment about Muslims, which is not grounds for a constitutional claim. *See Antoine v. Uchtman*, 275 Fed. Appx. 539, 541 (7th Cir. 2008) (noting that "the Constitution does not compel guards to address prisoners in a civil tone using polite language."); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws.") (collecting cases); *Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987) ("Defamation is not a deprivation of liberty within the meaning of the due process clause."). Nonetheless, in the interest of completeness, the Court will address each of Neal's constitutional claims in turn. The Court turns first to Neal's claim for a violation of his right of free exercise of his religion. It is well settled that "[t]he fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration." *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977). A prisoner is entitled to practice his or her religion as long as the practice does not unduly burden the institution. *See Richards v. White*, 957 F.2d 471, 474 (7th Cir. 1992). A prisoner's right to exercise his or her religious beliefs must be balanced against the legitimate

---

that a denial of a prisoner's grievance, even if wrongful, is not a basis for a claim under 42 U.S.C. § 1983. "Only persons who cause or participate in the violations [of a prisoner's constitutional rights] are responsible [under Section 1983]. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) (citations omitted). Thus, "[a] guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." *Id*. at 609-10. Here Neal is merely challenging the rejection of his administrative complaint or complaints about completed acts of alleged misconduct by guards at FCI Greenville, which does not rise to the level of a violation of Neal's constitutional rights. Therefore, Neal's claim against Cross will be dismissed.

goals of the institution. *See Hadi v. Horn*, 830 F.2d 779, 783 (7th Cir. 1987). To constitute a violation of the First Amendment, the government must place a substantial burden on the observation of a central religious belief or practice. *See Wisconsin v. Yoder*, 406 U.S. 205, 220-21 (1972). If a plaintiff is successful at crossing this hurdle, the government must then show that a compelling interest justifies the burden. *See id*. Prison regulations alleged to infringe constitutional rights are judged under a "reasonableness" test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987). Accordingly, restrictions that infringe upon a prisoner's exercise of religion will be upheld if they are reasonably related to a legitimate penological interest. *See id*. Relevant factors include: (1) whether a valid, rational connection exists between the regulation and a legitimate government interest; (2) whether there are other means of exercising the right in question for prisoners; (3) the impact accommodating the claimed right would have on guards, other inmates, and prison resources; and (4) the availability of obvious and easy alternatives to the regulation. *See Turner v. Safley*, 482 U.S. 78, 89-90 (1987). Legitimate penological demands include security and economic concerns. *See Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991). A prisoner bears the burden to disprove the legitimacy of a prison regulation or policy that impinges on the prisoner's constitutional rights. *See Woods v. Commissioner of Ind. Dep't of Corr.*, 652 F.3d 745, 748 (7th Cir. 2011). Moreover, "the problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

In this case, the challenged conduct, terminating Neal's visit with his wife by reason of a prison regulation allowing only limited contact between a prisoner at FCI Greenville and a visitor at the beginning and the end of a visit, clearly does not violate Neal's religious freedom. Neal can still pray and participate in his chosen religious activities and services: he merely cannot touch his wife while a visit with her is ongoing. Moreover, the regulation prohibiting contact between prisoners at FCI Greenville and visitors while visits are ongoing is rationally related to concerns for the safety and security of the institution. The object of the regulation restricting contact between prisoners and visitors at FCI Greenville obviously is to limit opportunities for prisoners and visitors to exchange contraband. In sum, Neal's claim for a violation of his right of free exercise of his religion fails.[2] The Court turns, then, to Neal's remaining constitutional claims. Concerning Neal's claim for a violation of his Fifth Amendment right of due process, in general a prisoner has a liberty interest that is protected by due process only where prison conditions impose atypical and significant hardship on the prisoner in relation to the ordinary incidents of

---

2.  To the extent Neal is attempting to claim that he was retaliated against for being a Muslim, this claim fails as well. According to the allegations of Neal's complaint, Jones, the prison guard who is alleged to have said that "Muslims think they own the world," was not the decision-maker responsible for terminating Neal's visit with his wife. The decision-maker appears instead to have been a guard named Brown, who is not named as a Defendant in this case. Given the complete absence of any allegations in Neal's complaint showing that Brown acted from a retaliatory motive, combined with the fact that Neal's visit with his wife was terminated pursuant to a valid prison regulation, it is impossible for Neal to show that unlawful retaliation was the "but-for" cause of the adverse action taken against him, that is, the termination of Neal's visit with his wife. *See Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2351 (2009) (to prevail in an action under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that [an unlawful motive] was the 'but-for' cause of the challenged . . . decision."); *Waters v. City of Chicago*, 580 F.3d 575, 584 (7th Cir. 2009) ("[T]he decisions which say that a plaintiff need only prove that his speech was *a* motivating factor in the defendant's decision [to retaliate] do not survive *Gross*[.]") (emphasis in original).

prison life. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Crowder v. True*, 74 F.3d 812, 814 (7th Cir. 1996).[3] Typically, prisoners have no independent constitutional right to visitation or to particular forms of visitation, including contact visitation. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) ("Respondents do not argue – nor can it seriously be contended, in light of our prior cases – that an inmate's interest in unfettered visitation is guaranteed directly by the Due Process Clause [of the Fourteenth Amendment]."); *Lynott v. Henderson*, 610 F.2d 340, 342 (5th Cir. 1980) ("Convicted prisoners have no absolute constitutional right to visitation."). Thus, prison officials have considerable discretion in determining the time, place, duration, and conditions of visitation. *See Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999) (stating that "for convicted prisoners visitation privileges are a matter subject to the discretion of prison officials.") (quotation and brackets omitted); *Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998) (citing *Kentucky Dep't of Corr*., 490 U.S. at 460) ("[T]he Supreme Court has held that inmates have no right to unfettered visitation. Rather, prison officials necessarily enjoy broad discretion in controlling visitor access to a prisoner[.]"). The restriction placed on Neal's visit with his wife falls within the discretion the Constitution affords to prison officials, does not work an atypical and significant hardship on Neal in relation to the ordinary incidents of prison life, and is "within the expected parameters of the sentence imposed by a court of law." *Sandin*, 515 U.S. at 485. Thus, Neal's Fifth Amendment due process claim fails.

---

3. The Court is aware, of course, that *Sandin* involved the right of due process under the Fourteenth Amendment, which is not binding on federal actors. *See San Francisco Arts & Athletics, Inc. v. United States Olympic Comm*., 483 U.S. 522, 542 n.21 (1987). However, the interpretation of due process under both the Fifth Amendment and the Fourteenth Amendment is substantially identical. *See, e.g., Bowles v. Willingham*, 321 U.S. 503, 518 (1944) (noting that "the restraints imposed on the national government . . . by the Fifth Amendment are no greater than those imposed on the States by the Fourteenth.").

With respect to Neal's Eighth Amendment claim, "withdrawal of visitation privileges for a limited period as a regular means of effecting prison discipline. This is not a dramatic departure from accepted standards for conditions of confinement." *Overton v. Bazzetta*, 539 U.S. 126, 137 (2003). Also, a prison regulation limiting visitation does not "create inhumane prison conditions, deprive inmates of basic necessities, or fail to protect their health or safety. Nor does it involve the infliction of pain or injury, or deliberate indifference to the risk that it might occur." *Id*. "If the withdrawal of all visitation privileges were permanent or for a much longer period, or if it were applied in an arbitrary manner to a particular inmate, the case would present different considerations." *Id*. However, "[a]n individual claim based on indefinite withdrawal of visitation or denial of procedural safeguards" does not support a finding that a prison regulation limiting visitation violates the Eighth Amendment. *Id*. Finally, as to Neal's equal protection claim, unlike the Fourteenth Amendment, the Fifth Amendment does not contain an equal protection clause, but the Fifth Amendment's due process clause does contain an equal protection component applicable to the federal government that is essentially the same as the equal protection guarantee under the Fourteenth Amendment. *See Harris v. McRae*, 448 U.S. 297, 322 (1980); *Bolling v. Sharpe*, 347 U.S. 497, 499-500 (1954). "To state an equal protection claim, a . . . plaintiff must allege that [an official] purposefully discriminated against him because of his identification with a particular (presumably historically disadvantaged) group." *Sherwin Manor Nursing Ctr., Inc. v. McAuliffe*, 37 F.3d 1216, 1220 (7th Cir. 1994). Ordinarily, prisoners do not constitute a suspect class and thus official actions concerning prisoners as a group are generally not entitled to heightened scrutiny. *See Pryor v. Brennan*, 914 F.2d 921, 923 (7th Cir. 1990). Where the circumstances of a case do not involve a suspect classification such as race or gender, a prisoner who challenges a particular prison

regulation must show or indicate that the regulation is not reasonably related to a legitimate governmental concern, or must demonstrate that the challenged regulation is an exaggerated response to that concern. *See Turner*, 482 U.S. at 89-90; *Caldwell v. Miller*, 790 F.2d 589, 609 (7th Cir. 1986). Likewise, while equal protection requires prisoners to be treated equally, a prison regulation that treats prisoners unequally will be upheld if it is reasonable in light of legitimate penological interests. *See May v. Sheahan*, 226 F.3d 876, 882 (7th Cir. 2000). The rational basis justifying an enactment against an equal protection claim need not be stated in the enactment; it is sufficient that a court can conceive of a reasonable justification for the challenged enactment. *See McDonald v. Board of Election Comm'rs of Chicago*, 394 U.S. 802, 809 (1969). Put another way, "[t]he burden is on the one attacking the [enactment] to negate every conceivable basis which might support it." *Estate of Kunze v. C.I.R.*, 233 F.3d 948, 954 (7th Cir. 2000). In this instance, the challenged prison regulation applies equally to all prisoners at FCI Greenville and has a legitimate penological purpose, namely, to limit opportunities for prisoners at FCI Greenville and their visitors to exchange contraband. "[L]imitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone*, 482 U.S. at 348. *See also Johnson v. McCann*, No. 08 C 4684, 2010 WL 2104640, at *8 (N.D. Ill. May 21, 2010) (a prison policy requiring all new prisoners to receive haircuts, including prisoners whose religious beliefs required them to wear dreadlocks, did not violate equal protection where the policy was applied in a non-discriminatory manner to all prisoners and served a legitimate penological purpose of preventing prisoners from hiding contraband in their hair). Neal has failed to state a claim for a violation of his right of equal protection.

To conclude, pursuant to 28 U.S.C. § 1915A, the Court finds that Neal's complaint is frivolous. Therefore, this action is **DISMISSED with prejudice**. Neal is advised that the dismissal of this case will count as one of his three allotted "strikes" under 28 U.S.C. § 1915(g). The Clerk of Court will enter judgment in accordance with this Order.

**IT IS SO ORDERED.**

DATED: April 3, 2012

/s/ G. Patrick Murphy
G. PATRICK MURPHY
United States District Judge